# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |  |
|---|---|---|
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | Case 1:18-cv-00916-LO-MSN |
| Appellant, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | On Appeal from Adv. Proc. No. |
| JOYCE CONARD, | ) | 16-01121-KHK (Bankr. E.D. |
| | ) | Va) |
| | ) | |
| Appellee | ) | |
| | ) | |

## BRIEF OF APPELLEE, JOYCE CONARD

/s/ *Justin P. Fasano*
MCNAMEE, HOSEA, JERNIGAN, KIM,
GREENAN & LYNCH, P.A.
Janet M. Nesse, Esquire (VSB # 25884)
Justin P. Fasano, Esquire (VSB # 75983)
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
Phone: 301-441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT…….……………………………..……..1

ISSUES PRESENTED AND STANDARD OF REVIEW ...................................1

STATEMENT OF THE CASE.............................................................................1

SUMMARY OF ARGUMENT ...........................................................6

ARGUMENT .......................................................................................7

   1. Recklessness does not equal "willfulness" for purposes of
     11 U.S.C. § 523(a)(1)(C), which requires a "willful attempt."…..………..7
   2. Reckless disregard does not exist as a matter of law……………… ……...13
   3. The Bankruptcy Court was not clearly erroneous when it held
     that Ms. Conard did not know of her unpaid tax debt………………….17

CONCLUSION....................................................................................20

STATEMENT REGARDING ORAL ARGUMENT ...........................................21

CERTIFICATE OF COMPLIANCE....................................................22

CERTIFICATE OF SERVICE ............................................................23

ADDENDUM ......................................................................................24

## TABLE OF AUTHORITIES

**Case Law**

*In re Blaker*, 205 B.R. 326, 329 (Bankr. M.D. Fla. 1996) .......................................13

*In re Brown*, No. 10-2181, 2012 WL 1970249 (Bankr. D. Utah) .........................13

*Erwin v. United States*, 591 F.3d 313  (4th Cir. 2010). ...........................................12

*Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors*
*(In re Dornier Aviation)*, 453 F.3d 225 (4th Cir.2006). ..........................................18

*Grogan v. Garner,* 498 U.S. 279, 287–88 (1991) ....................................................16

*In re Griffith*, 206 F.3d 1389 (11th Cir. 2000) .......................................................10

*In re Irvine*, 163 B.R. 983 (Bankr. E.D. Pa. 1994)..................................... 11,13,14

*In re Pert*, 284 B.R. 59 (Bankr. M. D. Fla 2000) ....................................................10

*In re Pierce*, 184 B.R. 338 (Bankr. N.D. Iowa 1995)...............................................11

*In re Schlesinger*, 290 B.R. 529 (Bankr. E.D. Pa. 2002)  ........................................10

*In re Waterman*, No. 10-01849-ALS7, 2012 WL 2255002, (Bankr. S.D.
Iowa June 15, 2012).................................................................................................15

*Kawaauhau v. Geiger*, 523 U.S. 57 (1998) ................................................................8

*Matter of Birkenstock*, 87 F.3d 947 (7th Cir. 1996)  .................................................7

*Matter of Howard*, 167 B.R. 684 (Bankr. M.D. Fla. 1994)....................................10

*Nunnery v. Rountree*, 478 F.3d 215 (4th Cir.2007) ...................................................8

*Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921
(3d Cir.1990)……………………………………………………………… 11

*Spies v. United States,* 317 U.S. 492 (1943)...........................................................10

*See Turpin v. United States*, 970 F.2d 1344 (4th Cir. 1992) .................................. 12

*United States v. Clayton*, 468 B.R. 763 (M.D.N.C. 2012)…………………… 15

*United States v. Storey*, 640 F.3d 739 (6th Cir. 2011)...........................................16


**Statutes**

11 U.S.C. § 507(a)(8)................................................................................................11

11 U.S.C. § 523(a)(1)(C) ....................................................................................Passim

11 U.S.C. § 523(a)(6)..................................................................................................8

11 U.S.C. § 523(a)(9)..................................................................................................9

11 U.S.C. § 523(a)(12)................................................................................................9

26 U.S.C. § 6672 .................................................................................................. 11,12

26 U.S.C. § 7201 ...................................................................................................9,10


**Other Authority**

Black's Law Dictionary . ...........................................................................................12

## JURISDICTIONAL STATEMENT

Appellee Joyce Conard ("Ms. Conard") accepts the jurisdictional statement as set forth by the Internal Revenue Service "(IRS") in its brief.

## ISSUES PRESENTED AND STANDARD OF REVIEW

Ms. Conard accepts the statement of issues presented and standard of review as set forth by the IRS in its brief.

## STATEMENT OF THE CASE

This appeal concerns whether or not the IRS met its burden of proof to show that Ms. Conard willfully attempted in any manner to evade or defeat tax debts. Because the IRS did not meet its burden, Bankruptcy Court's ruling that Ms. Conard's tax debts are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) should be affirmed.

Ms. Conard is an administrative assistant with no experience in business ownership, and a layperson's understanding of taxes.[1] Her husband Tyrone Conard ("Mr. Conard") previously owned a life insurance agency, which he opened in 2001.[2] Before Mr. Conard started his business, Ms. Conard was able to assist in the preparation of her family's tax returns.[3] After Mr. Conard opened his

---

1 *See* **Exhibit A**, transcript of Trial of *Conard vs. IRS* in the United States Bankruptcy Court for the Eastern District of Virginia, on Jan. 26, 2018, Adv. Proc. 16-01121-KHK (the "Trial Transcript"), 18:23-20:24.
2 *See* Trial Transcript, 27:14-27:21.
3 *See* Trial Transcript, 26:19-27:2.

business, the family's tax obligations became much more complicated, and were handled by Mr. Conard.[4] From 2004 to 2009, Ms. Conard trusted Mr. Conard to handle the family's tax obligations, substantially all of which arose from Mr. Conard's business.[5]

Unfortunately, Mr. Conard fell behind on the tax obligations created by the business, and fell behind on preparing tax returns. Nevertheless, when Mr. Conard, through his accountants, prepared late tax returns showing significant arrears, Ms. Conard signed joint tax returns as his spouse.[6] By signing joint returns, Ms. Conard created joint liability where no personal liability would have otherwise existed for her. Ms. Conard trusted that her husband would take care of any unpaid taxes, and had no idea the extent to which Mr. Conard had fallen behind.[7] She did not look on the returns to see the amount owed.[8] She had no idea about the unpaid obligations she was creating for herself by signing joint returns.[9] She assumed the tax obligations of the business ebbed and flowed, as they do for any business, and that while they may have been owed at any one particular time, they were generally being paid appropriately.[10]

---

4 *See* Trial Transcript, 43:9-43:23.
5 *See* Trial Transcript, 30:19:30:25, 31:8-31:22.
6 *See* Trial Transcript, 44:6-44:15.
7 *See* Trial Transcript, 30:19:30:25, 31:8-31:22
8 *See* Trial Transcript, 48:22-49:11
9 *See* Trial Transcript, 48:22-49:11
10 *See* Trial Transcript, 53:12-20; 30:4-30:6.

By 2014, after Mr. Conard's life insurance agency had failed, the Conards filed for Chapter 7 bankruptcy in order to obtain a fresh start.   The Conards' tax obligations were over three years old, and thus old enough to be dischargeable under 11 U.S.C. § 523(a)(1)(A).   Nevertheless, after the Conards received their discharge, the IRS continued to collect on the tax obligations.   The Conards then learned that the IRS was asserting that the taxes were non-dischargeable under 11 U.S.C. § 523(a)(1)(C), which provides that "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt… **(1)** for a tax or a customs duty… **(C)**  with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."   11 U.S.C. § 523(a)(1)(C).[11]

Faced with hundreds of thousands of dollars of taxes that they believed should have been discharged, the Conards filed an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") for a judgment determining that their debts to the IRS for 2004 through 2009 had been discharged.[12]   Notwithstanding that the Conards were the Plaintiffs, the Internal Revenue Service had the burden to prove by a preponderance of the evidence that the Conards willfully attempted to evade or

_____

11 To be clear, the IRS does not assert that either Mr. or Ms. Conard made a fraudulent return.  Rather, it only asserts in this appeal that Ms. Conard willfully attempted to evade or defeat her taxes.
12 *See* **Exhibit B.**

3

defeat their tax liabilities.  Judge Keith Phillips, in a memorandum opinion, granted

the IRS' motion for summary judgment as to Mr. Conard, who had ran the

business, finding that there was no question of material fact that Mr. Conard had

knowledge of the arrearages, and put them on the "back burner." [13]   However,

Judge Phillips denied the IRS' motion for summary judgment as to Ms. Conard,

because there were open questions about how much she really knew. [14]   The case

thereafter proceeded to a one day bench trial before Judge Klinette H. Kindred,

who took the matter under advisement.

    In a memorandum opinion, Judge Kindred found that Ms. Conard testified

credibly that she had no knowledge of the unpaid taxes, that she had no intent to

evade any tax obligations, and that she trusted her husband and his professionals to

pay any taxes owed. [15]   The IRS presented no evidence that Ms. Conard in any

way sought to evade her taxes.  Accordingly, Judge Klinette Kindred entered

judgment in favor of Ms. Conard, discharging her tax obligations.

    On appeal, the IRS seeks to portray Ms. Conard as being sophisticated

enough that she must have known about the business' unpaid taxes.  This is far

from the truth.  If Ms. Conard was a sophisticated businessperson who thought

taxes were not being paid, she would not have put her signature anywhere near the

---

13 *See* **Exhibit C.** (the "Summary Judgment Opinion").
14 *See* Summary Judgment Opinion at p. 14.
15 *See* **Exhibit D** (the "Trial Opinion"), p. 8-9.

late-filed returns prepared by Mr. Conard and his professionals.   In fact, during the years 2004 through 2009, Ms. Conard worked as a receptionist, first for Mr. Conard, and later for unrelated employers.  Prior to that, she worked as a data entry employee for 22 years.[16]  She is now an administrative assistant in the Fairfax County Circuit Court, making $18.00 per hour.[17]   She has one year's college education.[18]  She has never heard of quarterly estimated tax payments.[19]  She did not look at the tax return to see the amount owed, and she gave any notices from the IRS to her husband.[20]  She trusted her husband, who gave the impression that he was taking care of the taxes created by that business.[21]

Not being able to prove Ms. Conard knew about the unpaid taxes, the IRS primarily relies on the expenses incurred by the Conards to create an inference that Ms. Conard sought to evade taxes.   The expenses fall short of the luxuries cited in the case law discussing Section 523(a)(1)(C), and, if anything, show that Ms. Conard did not live extravagantly, but rather within the means that she thought her family could afford.[22]  The Conards paid $1,800 a month[23] for their mortgage for a

---

16 *See* Trial Transcript, 19:12-19:14

17 *See* Trial Transcript, 20:22-20:24.

18 *See* Trial Transcript, 19:4-19:8

19 *See* Transcript of Deposition of Joyce Conard, 21:1-11, attached as **Exhibit E.**

20 *See* Trial Transcript, 30:19:30:25, 31:8-31:22.

21 *See* Trial Transcript, at 35:13-35:15, 46:6-46:11, 47:18-48:7.

22 *See* Trial Transcript, 40:9-40:10 ("I would assume that if he bought the car that he felt like he could afford the car.").

23 *See* Trial Transcript, 15:5-15:6.

modest four bedroom house[24,] a bargain in Northern Virginia.  They bought their

furniture at Value City,[25] they shopped for clothes at Marshall's and TJ Maxx[26].

They infrequently dined out, and not at luxurious restaurants.[27]  The expenses

shown by the IRS are routine upper-middle-class expenses.  As two different

judges in the Bankruptcy Court determined, they do not in any way prove that Ms.

Conard willfully evaded any taxes.  But even if they are subject to different

interpretations, they certainly do not prove that the IRS is entitled to judgment as a

matter of law.  The Bankruptcy Court was well within its discretion to weigh the

expenses as evidence and find them lacking.

## SUMMARY OF ARGUMENT

The IRS presents three arguments on appeal.  First, the IRS argues that the

Bankruptcy Court incorrectly applied a standard of actual intent to section

523(a)(1)(C) of the Bankruptcy Code when recklessness would have sufficed.

Second, the IRS argues recklessness exists as a matter of law.  Third, the IRS

argues that the Bankruptcy Court's ruling was clearly erroneous because Ms.

Conard had knowledge of the unpaid taxes arising from Mr. Conard's business as a

matter of law.  The IRS is incorrect on each ground, as set forth below.

---

24 The IRS agent at trial testified that "They lived in a single-family residence.  In
my opinion, didn't appear to be a lavish mansion or anything like that."  Trial
transcripy, 74:10-12.
25 *See* Trial transcript, 17:3-17:9.
26 *See* Trial transcript, 21:9-21:15.
27 *See* Trial Transcript, 24:11- 24:14.

## ARGUMENT

1. **Recklessness does not equal "willfulness" for purposes of 11 U.S.C. § 523(a)(1)(C), which requires a "willful attempt."**

"The plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought "in any manner to evade or defeat" his tax liability) and a mental state requirement (that the debtor did so "willfully")." *Matter of Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996). "Turning to the mental state requirement, the courts have interpreted "willfully," for purposes of § 523(a)(1)(C), to require that the debtor's attempts to avoid his tax liability were "voluntary, conscious, and intentional." In other words, the debtor must both (1) know that he has a tax duty under the law, and (2) voluntarily and intentionally attempt to violate that duty." *Id.* at 952.

It contorts both logic, grammar and the policy of the Bankruptcy Code to argue that the lesser standard of recklessness satisfies a statute which requires a "willful attempt[]." Section 523(a)(1)(C) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt… **(1)** for a tax or a customs duty… **(C)** with respect to which the debtor made a fraudulent return or *willfully attempted* in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C) (emphasis added). "When considering the applicability of an exception to discharge, [courts must] construe the exception narrowly 'to protect the purpose of providing debtors a

*/*

fresh start.' " *Nunnery v. Rountree*, 478 F.3d 215, 219 (4th Cir.2007).

Accordingly, the term "willful attempt[]" should be given its plain meaning, and narrowly read to include only intentional acts, not an overbroad meaning that encompasses recklessness.

The term "willful" appears only one other time in section 523(a) of the Bankruptcy Code.  Specifically, the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The Supreme Court has held that Section 523(a)(6) does not except from discharge reckless conduct which leads to injury.  *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).  In *Kawaauhau*, a doctor was alleged to have recklessly prescribed a cheaper medication when a more expensive medication was appropriate, and then canceled treatment before an infection subsided, resulting in the amputation of the patient's knee.  *Kawaauhau*, at 59. The Supreme Court held that the patient's claim was dischargeable in the doctor's bankruptcy, even though the Bankruptcy Court found that the doctor's treatments fell well below the standard of care, because Congress' use of the term "willful" implied that only an intentional tort would be non-dischargeable.  *Id.* at 61.  The Supreme Court noted that Congress could have included the term "reckless" in Section 523(a)(6) of the Bankruptcy Code, as it did elsewhere, but did not.  *Id.*

As noted in *Kawaauhau*, Congress knows how to carve exceptions to the

discharge of civil claims based on recklessness when it chooses.  Section

523(a)(12) of the Bankruptcy Code[28] excepts from discharge any debt "for

malicious or *reckless* failure to fulfill any commitment by the debtor to a Federal

depository institutions regulatory agency to maintain the capital of an insured

depository institution…"  11 U.S.C. § 523(a)(12).   Section 523(a)(9) excepts from

discharges debt resulting from a specific type of recklessness, namely, drunk

driving.  11 U.S.C. § 523(a)(9).  In fact, in another section of the Bankruptcy Code,

Congress specifically distinguishes between willfulness and recklessness.  Section

522(q)(1)(B)(iv) provides that a debtor cannot exempt certain property from debts

arising from "any criminal act, intentional tort, or *willful or reckless* misconduct

that caused serious physical injury or death to another individual in the preceding 5

years."  11 U.S.C. § 522(q)(1)(B)(iv).  Clearly, under the Bankruptcy Code,

Congress considers willfulness and recklessness to be separate and exclusive

concepts.

    The language of Section 523(a)(1)(C) is borrowed from the federal tax code.

Section 7201 of the United States Tax Code provides:

> Any person who *willfully attempts in any manner to evade or defeat
> any tax* imposed by this title or the payment thereof shall, in addition
> to other penalties provided by law, be guilty of a felony and, upon
> conviction thereof, shall be fined not more than $100,000 ($500,000
> in the case of a corporation), or imprisoned not more than 5 years, or
> both, together with the costs of prosecution.

---

28 Then codified as 11 U.S.C. § 523(a)(11).

26 U.S.C. § 7201 (borrowed language in italics). Section 7201 is a criminal statute which requires intent, not just recklessness. *See Spies v. United States,* 317 U.S. 492, 498, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) (holding that the standard for fraud under section 7201 requires the willful commission of an affirmative act by the taxpayer). Accordingly, numerous Bankruptcy Courts have required intentional conduct to hold a debt non-dischargeable under 11 U.S.C. § 523(a)(1)(C). *See, e.g., Matter of Howard*, 167 B.R. 684, 688 (Bankr. M.D. Fla. 1994) ("This Court agrees with the application of the definition of willful as applied in the criminal tax evasion statute with respect to 11 U.S.C. § 523(a)(1)(C)"); *In re Schlesinger*, 290 B.R. 529, 540 (Bankr. E.D. Pa. 2002) ("carelessness" in claiming improper deductions was dischargeable under Section 523(a)(1)(C) when mistakes were unintentional); *In re Pert*, 284 B.R. 59 (Bankr. M. D. Fla 2000) (applying Tax Section 7201 to determine if debt was non-dischargeable under Bankruptcy Section 523(a)(1)(C)).

The Eleventh Circuit has held that in order to prove liability under Section 523(a)(1)(C), the IRS must prove "(1) the debtor had a duty under the law, (2) the debtor knew [s]he had that duty, and (3) the debtor *voluntarily and intentionally* violated that duty." *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000) (*citing In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995)) (emphasis added). Thus, the standard is the Debtor's intent, not recklessness. In seeking to advance the recklessness

10

threshold, the IRS primarily relies on *In re Irvine*, 163 B.R. 983 (Bankr. E.D. Pa. 1994)[29], which determined that recklessness could satisfy Section 523(a)(1)(C). In so determining, the *Irvine* court analogized to Section 6672 of the Bankruptcy Code, which provides as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who *willfully fails* to collect such tax, or truthfully account for and pay over such tax, or *willfully attempts in any manner to evade or defeat* any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

26 U.S.C. § 6672 (emphasis added). The *Irvine* Court found that because Section 6672 is determined under a recklessness standard,[30] that section 523(a)(1)(C) of the Bankruptcy Code should as well.

It is inappropriate under Section 523(a)(1)(C) to import the recklessness standard applied for failure to pay trust fund taxes under Section 6672 of the Tax Code. First, Congress has determined that the collection of trust funds is so important that debts arising from the failure to collect such funds are never dischargeable. *See* 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(D). As Congress codified a separate statute to except Section 6672 debts from discharge, the

---

29 The IRS also cites to *In re Pierce*, 184 B.R. 338 (Bankr. N.D. Iowa 1995), but *Pierce* merely quotes *Irvine* for the recklessness standard.
30 *See Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 928 (3d Cir.1990).

recklessness standard of Section 6672 should only be applied to that statute.

Further, Section 6672 not only includes the "willfully attempts" language, it also includes language that creates liability when a taxpayer "willfully fails" to pay trust fund taxes.  This is where the recklessness standard arises.  In the "willfully fails" context, a recklessness standard is appropriate.[31]  "Fails" implies the undertaking of a duty that it could be reckless not to follow.  On the other hand, to "willfully attempt" something implies an affirmative act.  *See Willful*, Black's Law Dictionary (6th ed. 1990) (defining 'willful' as "Proceeding from a conscious motion of the will; knowingly, deliberate"); *Attempt*, Black's Law Dictionary (6th ed. 1990)   (defining 'attempt' in pertinent part as "an endeavor to do an act").  Other courts have held that willful evasion under Section 523(a)(1)(C) requires the specific intent to evade taxes required by 26 U.S.C. § 6663(b).   *See, e.g., In re Peterson*, 152 B.R. 329, 334 (D. Wyo. 1993) (citing  *Gilder v. United States (In re Gilder),* 122 B.R. 593 (Bankr.M.D.Fla.1990)  (reciting ruling that 523(a)(1)(C) is satisfied when IRS met civil fraud standard of 26 U.S.C. § 6663(b), then codified as 26 U.S.C. § 6653(b)).

A recklessness standard is appropriate for enforcing civil penalties for failure to collect trust fund taxes.  Trust funds are typically collected by

---

31 Indeed, both Fourth Circuit cases cited by the IRS are based on willful failure to pay trust fund taxes, not a willful attempt to evade tax liability.  *See Turpin v. United States*, 970 F.2d 1344 (4th Cir. 1992) (willful failure to pay trust fund taxes is based on recklessness); *Erwin v. United States*, 591 F.3d 313  (4th Cir. 2010).

professionals who are held to a higher standard of knowledge.  As even the *Irvine* case acknowledges, the more knowledgeable a person is about tax law, the more likely they are to be found to be reckless.  *Irvine*, at 988 (determining debtor who had embezzled funds was not reckless in failing to report such income because he was not sophisticated enough to know he had such a duty).  It is inappropriate to apply a recklessness standard to laypeople like Ms. Conard, who have no business or legal experience, and who rely on spouses and professional to handle their tax matters.  A layperson like Ms. Conard should only be held to have willfully attempted to evade or defeat her taxes if she actually intentionally attempted to evade or defeat her taxes.

2. **Reckless disregard does not exist as a matter of law**

Assuming *arguendo* that a recklessness standard applies, the record before the Bankruptcy Court falls far short of establishing recklessness, and certainly does not prove recklessness as a matter of law.  It is not reckless for an unsophisticated spouse to trust her husband and his professionals to take care of the taxes resulting from the husband's business.  *See, e.g.*, *In re Blaker*, 205 B.R. 326, 329 (Bankr. M.D. Fla. 1996) (discharging tax debts of husband  under 523(a)(1)(C) who was determined to have acted reasonably by following his wife's directions and signed tax return without cursory review); *In re Brown*, No. 10-2181, 2012 WL 1970249 (Bankr. D. Utah), at *9 (wife who managed household expenses but had no

13

independent income or knowledge of events leading to tax liability did not

willfully evade taxes under Section 523(a)(1)(C)).  Ms. Conard's testimony at trial

established that she had no experience owning or managing a business.  She

worked as a receptionist for Mr. Conard's business until 2006, but did not have

access to business' checks or finances.[32]  She had no legal experience.  She has one

year's college education.  Her sole tax experience consisted of gathering

documents for tax preparers in the years before her husband started his business.

She had no understanding regarding any requirement to pay quarterly taxes.  As

stated above, Ms. Conard's lack of sophistication undercuts any claim of

recklessness.  *Irvine*, at 988.  She was entitled to rely on her husband, who ran a

life insurance agency with 30 employees, to pay the taxes he incurred in the

business.

The IRS details at length the Conards' expenditures, but did not establish

that the Conards lived a lavish lifestyle.  They paid $1,800 a month[33] for their

mortgage for a modest four bedroom house[in] Northern Virginia, bought their

furniture at Value City[34], shopped for clothes at Marshall's and TJ Maxx[35].  They

infrequently dined out, and not at luxurious restaurants.[36]  The discretionary

---

32 *See* Trial Transcript, 20:1-20:6.
33 *See* Trial Transcript, 15:5-15:6.
34 *See* Trial transcript, 17:3-17:9.
35 *See* Trial transcript, 21:9-21:15.
36 *See* Trial Transcript, 24:11- 24:14.

purchases about which the IRS complains consist of vehicle purchases, tuition for

trade school for their son (paid for with a home equity loan)[37], two televisions for

their house, and a vacation partially paid for by Mr. Conard's employer.[38]  The IRS

also complains about expenses for business suits at Saks Fifth Avenue for Mr.

Conard, and expenses that Mr. Conard incurred to entertain clients[39], including a

boat slip rental for one season[40], and golf outings.  These are relatively modest

expenses commensurate with a middle-class lifestyle, but not extravagant.  The

fanciest items are the cars, suits, and client entertainment expenses.  Not

coincidentally, these were the items necessary for Mr. Conard to convey an

outward appearance of success for the furtherance of his business.[41]  The

household expenses of Ms. Conard, including the inexpensive furniture and

clothing, are more modest, and pale in comparison to the expenses cited in other

case law.  *See, e.g, United States v. Clayton*, 468 B.R. 763 (M.D.N.C. 2012).

Relatively modest discretionary purchases, in the absence of other indicia of tax

evasion, do not render tax debt non-dischargeable for purposes of Section

523(a)(1)(C).  *In re Waterman*, No. 10-01849-ALS7, 2012 WL 2255002, at *7

(Bankr. S.D. Iowa June 15, 2012) (relatively minor discretionary expenses did not

---

37 *See* Trial Transcript, 35:21-36:21.
38 *See* Trial transcript, 18:10-18:14.
39 *See* Trial Transcript, 62:8-62:20.
40 *See* Trial Transcript, 63:9:63:17.
41 *See* Trial Transcript, 62:8-63-17.

indicate tax evasion); *United States v. Storey*, 640 F.3d 739, 746 (6th Cir. 2011)
(Debtor was not required to meet standard of living low enough to discharge
student loans in order to discharge tax obligations).

The IRS argues it was reckless for Ms. Conard to sign tax returns, and turn
over the IRS notices to her husband.  But Ms. Conard's testimony was she gave all
notices from the IRS to her husband because the taxes were associated with his
business.  For most of the tax years at issue, she had no taxable income of her own,
having temporarily quit working to take care of her grandchild.  It is not reckless
for a layperson to rely on a businessperson spouse to pay his business taxes.   Ms.
Conard had no knowledge of Mr. Conard's business expenses; she gave him the
tax notices the way she would give him any mail related to the business.

It is important to note the IRS bears the burden to prove, by a preponderance
of the evidence, that a particular claim is nondischargeable under § 523(a). *See*
*Grogan v. Garner,* 498 U.S. 279, 287–88 (1991); *see also* Trial Transcript at 56:4-
56:7 (IRS counsel admits IRS has burden of proof).  In support of this burden, the
IRS cites to Ms. Conard's signature on the tax return as *prima facie* evidence of
her knowledge of the contents.  But any inference to be made from the Ms.
Conard's signature was rebutted by her testimony.  As an unsophisticated
layperson, Ms. Conard was justified to rely on her husband to pay the tax debts
associated with his business.

16

The evidence before the Court belied any showing of recklessness. The evidence demonstrated that Ms. Conard was (1) unsophisticated; (2) relied on her husband and his professionals to handle her family's tax obligations; (3) had no knowledge of the income or expenses of her husband's business; (4) had misunderstandings of tax law; (5) and had no significant taxable income of her own. There is no evidence the tax returns were fraudulent, and the IRS did not assert they were. Ms. Conard was truthful and forthcoming in her testimony. The evidence showed a spouse who believed that her husband's business was modestly successful, and made purchases in accordance with a middle class lifestyle. Weighed in its entirety, the IRS did not meet its burden of proof to prove recklessness, even should such standard apply, and certainly did not prove recklessness as a matter of law.

**3. The Bankruptcy Court was not clearly erroneous when it held that Ms. Conard did not know of her unpaid tax debt.**

Finally, in a last ditch effort, the IRS recharacterizes Ms. Conard's testimony to imply that she knew of the unpaid tax debt as a matter of law. This is contrary to the findings of the Bankruptcy Court. The Bankruptcy Court properly evaluated Ms. Conard's credibility and determined her to be truthful as to her lack of knowledge of the tax debts. Trial Opinion, at p. 8. The Bankruptcy Court is entitled to significant discretion with regard to Ms. Conard's credibility. "Deference to the bankruptcy court's findings is particularly appropriate when, as

17

here, the bankruptcy court presided over a bench trial in which witnesses testified and the court made credibility determinations." *Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation)*, 453 F.3d 225, 235 (4th Cir.2006).

Certainly, Ms. Conard signed the joint tax returns at issue in this case.  Ms. Conard's testimony was that she did not look on a tax return to determine the amount owed, because she assumed such amount was being paid by Mr. Conard's business.  She had never owed money for the tax returns that she helped prepare. She further testified that she gave all notices from the IRS to her husband, as nearly all of the Conards' taxable income was attributable to him.

The IRS takes two excerpts from Ms. Conard's testimony to assert she had knowledge of the tax debts "as a matter of law."  The excerpts do anything but prove such knowledge.  The excerpts indicate that Ms. Conard understood that at various times, any business may owe taxes, and that such debts were paid at the end of the year.  This is not an unreasonable assumption; many business taxes, such as sales taxes, are collected by a business and paid in arrears.   Ms. Conard testified numerous other times that she thought the business taxes were being paid.[42]

Finally, it should be noted that even if Ms. Conard had full knowledge of all

---

[42] *See* Trial Transcript at 35:13-15; 46:6-11; 55:21-23; 56:9-20.

of the unpaid taxes, there existed a perfectly legal way for her to "evade" such taxes.  She simply could have insisted on filing separate returns.  She gained no benefit from filing a joint return with Mr. Conard, only years of heartburn and eventually, bankruptcy.  Instead, because she was unsophisticated, she signed the papers that were put in front of her, and has lived to bear the consequences.  No one with any knowledge that Mr. Conard had not paid taxes for four years would have signed those late returns and exposed themselves to joint liability for hundreds of thousands of dollars.    Nobody should be held to have willfully evaded a tax when the incurrence of the obligation was, essentially, a voluntary guaranty of somebody else's tax liabilities.  The Bankruptcy Court properly found that Ms. Conard had no knowledge of the unpaid taxes and properly determined they were discharged as to Ms. Conard.  The Bankruptcy Court should be affirmed.

## <u>CONCLUSION</u>

WHEREFORE, Appellee Joyce Conard respectfully requests that this Court AFFIRM the judgment of the Bankruptcy Court, and grant such other relief as it deems appropriate and proper.

Dated: November 9, 2018      Respectfully submitted,

/s/ *Justin P. Fasano*
MCNAMEE, HOSEA, JERNIGAN, KIM,
GREENAN & LYNCH, P.A.
Janet M. Nesse, Esquire (VSB # 25884)
Justin P. Fasano, Esquire (VSB # 75983)
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
Phone: 301-441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com

## **STATEMENT REGARDING ORAL ARGUMENT**

Based on the foregoing brief, and pursuant to Federal Rule of Bankruptcy Procedure 8019(a), Ms. Conard states that this appeal presents complicated issues of law and fact which justify oral argument.  Accordingly, Ms. Conard requests oral argument on this appeal.

 /s/ Justin P. Fasano
Justin P. Fasano

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE
REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Fed. R. Bankr.

Proc. 8015(a)(7)(B) because this brief contains 5,049 words, excluding the parts of

the brief exempted by Fed. R. Bankr. Proc. 8015(a)(7)(B)(iii)

2.      This brief complies with the typeface requirements of Fed. R. Bankr.

Proc. 8015(a)(5) and the type style requirements of Fed. R. Bankr. Proc. 8015(a)(6)

because this brief has been prepared in a proportionally spaced typeface

using Microsoft Word in Size 14 Times New Roman font.

/s/ Justin P. Fasano
Justin P. Fasano

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will

electronically serve notice of filing on:

Robert K. Coulter
Assistant United States Attorney
VSB: 42512
Counsel for United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3745
Telefax: (703) 299-2584
robert.coulter@usdoj.gov

Nelson Wagner
Trial Attorney, United States Department of Justice Tax Division
DC Bar No. 989413
P.O. Box 227
Washington, D.C. 20044
202-616-3369 (v)
202-514-6866 (f)
Nelson.Wagner@usdoj.gov

/s/ Justin P. Fasano
Justin P. Fasano

# ADDENDUM[43]

**Exhibit A: Trial Transcript**
**Exhibit B: Complaint**
**Exhibit C: Summary Judgment Opinion**
**Exhibit D: Trial Opinion**
**Exhibit E: Transcript of Deposition of Joyce Conard**

---

43 All exhibits are included in the designation of record before this Court.

24